UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEPHEN L. EMERY,<br><br>                Plaintiff,<br><br>    v.<br><br>NATIONAL UNION FIRE<br>INSURANCE COMPANY OF<br>PITTSBURGH, PA,<br><br>                Defendant. | NO:  12-CV-0215-TOR<br><br>ORDER ON CROSS-MOTIONS FOR<br>PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT are Defendant's Motion for Partial Summary Judgment (ECF No. 39) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 42).  These matters were submitted for consideration without oral argument.  The Court has reviewed the briefing and the record and files herein, and is fully informed.

//

//

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 1

BACKGROUND

Plaintiff has asserted various causes of action arising from Defendant's denial of his claims for various benefits under a group disability insurance policy. The parties have filed cross-motions for partial summary judgment on all claims relating to Defendant's denial of two specific types of coverage: Temporary Total Disability and Continuous Total Disability.[1]  For the reasons discussed below, the Court will grant Defendant summary judgment on all claims except one: a *per se* CPA violation arising from Defendant's failure to provide a certificate explaining the terms and conditions of coverage in violation of WAC 284-30-600(1).

FACTS

Plaintiff Stephen Emery ("Plaintiff") began working as an independent contract courier for Henry Industries, Inc. ("Henry Industries") in August 2008. While employed in this capacity, Plaintiff enrolled in a group disability insurance policy ("the policy") issued by Defendant National Union Fire Insurance Company ("Defendant") and offered to employees of Henry Industries.  Plaintiff is an insured under this policy.

---

[1] Other claims relating to Defendant's partial denial of reimbursement for Plaintiff's medical expenses are not at issue in the instant motions.

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 2

As relevant here, the policy provides two different types of disability coverage.  The first coverage, referred to as the Temporary Total Disability ("TTD") Benefit, is triggered when an insured suffers an injury resulting in "temporary total disability"—that is, an injury which prevents the insured from "performing the duties of his or her regular, primary occupation" and which requires ongoing medical care.  The second type of coverage, known as the Continuous Temporary Disability ("CTD") Benefit, is triggered when an insured remains disabled after exhausting all available TTD benefits, provided that certain additional conditions are satisfied.

Most notably for purposes of the instant motions, both types of benefits are contingent upon the insured becoming "temporarily totally disabled" within 90 days of the date on which he or she was injured.  This 90-day "commencement period" is a substantive limitation of coverage.  If the insured becomes unable to work within 90 days, he or she is entitled to the TTD benefit (and may later qualify for the CTD benefit).  If the insured becomes unable to work *more* than 90 days after the injury, however, he or she does not qualify for either benefit.

On June 11, 2009, Plaintiff sustained an injury to his back while performing his duties as a courier.  Plaintiff received treatment for the injury and submitted a claim to Defendant for reimbursement of $7,027 in medical expenses under the

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 3

1   policy's "Accident Medical Expense Benefit."  Defendant paid all but one of the

2   claimed medical expenses in the amount of $144.

3        Plaintiff sustained a second occupational injury to his back on February 24,

4   2010.  Plaintiff sought medical treatment for this second injury and submitted a

5   new claim to Defendant for reimbursement of medical expenses.  Defendant paid

6   for certain medical expenses, but not others.  Plaintiff returned to work in mid-

7   March while taking prescription medications to manage his pain symptoms.

8        On March 14, 2010, Plaintiff submitted a Proof of Loss form to Defendant.

9   In response to Question 3C on the form, Plaintiff indicated that he was not totally

10  disabled.  *See* ECF No. 41-5 at 2 (answering "N/A" to the question, "When did you

11  become totally disabled (unable to work)?").  Plaintiff continued to work for Henry

12  Industries full time through December 2010, as evidenced by Plaintiff's responses

13  to Defendant's interrogatories, Plaintiff's statements to one of his doctors, and

14  Plaintiff's income tax records.  ECF No. 40 at ¶¶ 14-18.

15       On December 30, 2010, Plaintiff contacted Defendant by phone and inquired

16  about the availability of TTD benefits under the policy.  According to Defendant,

17  Plaintiff was advised that TTD benefits were not available because his claimed

18  disability had not commenced within 90 days following the date of his second

19  injury.  ECF No. 40 at ¶ 21.  According to Plaintiff, Defendant informed him that

20  TTD benefits were not available because he had not filed a claim for such benefits

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 4

1    within 90 days of his second injury.  ECF No. 46 at 2.  The claim was ultimately

2    denied on the ground that Plaintiff did not become "temporarily totally disabled"

3    as that phrase is defined in the policy within the 90-day commencement period.

4    ECF No. 42-12.

5                                         DISCUSSION

6           Summary judgment may be granted to a moving party who demonstrates

7    "that there is no genuine dispute as to any material fact and that the movant is

8    entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party

9    bears the initial burden of demonstrating the absence of any genuine issues of

10   material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then

11   shifts to the non-moving party to identify specific genuine issues of material fact

12   which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

13   242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the

14   plaintiff's position will be insufficient; there must be evidence on which the jury

15   could reasonably find for the plaintiff."  *Id.* at 252.

16          For purposes of summary judgment, a fact is "material" if it might affect the

17   outcome of the suit under the governing law.  *Id.* at 248.  A dispute concerning any

18   such fact is "genuine" only where the evidence is such that a reasonable jury could

19   find in favor of the non-moving party.  *Id.*  In ruling upon a summary judgment

20   motion, a court must construe the facts, as well as all rational inferences therefrom,

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 5

in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

## A. Defendant's Motion for Partial Summary Judgment (Claims for Breach of Contract, Declaratory Relief and Bad Faith)

Defendant has moved for partial summary judgment on all claims[2] arising from its denial of Plaintiff's claims for TTD and CTB benefits. The sole basis for this motion is that Plaintiff did not become "temporarily totally disabled" as that phrase is defined in the policy within the 90-day "commencement period" applicable to his claims. "Because it is undisputed that Mr. Emery continued to work and did not become disabled during the 90-day period following either [workplace] accident," Defendant argues, "the NUFIC policy does not provide disability benefits related to [his] claims." ECF No. 39 at 3.

//

//

---

[2] The Court construes Plaintiff's Complaint to assert the following causes of action arising from Defendant's denial of his claim for TTD and CTD benefits: (1) breach of contract; (2) declaratory relief; (3) violations of the CPA; (4) violations of IFCA; and (5) bad faith.

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 6

1.  <u>Claims for Breach of Contract and Declaratory Relief</u>

Defendant denied Plaintiff's claim for TTD benefits on the ground that he did not become "temporarily totally disabled" within the 90-day "commencement period" following either of his workplace injuries.  The policy language on which Defendant relied reads as follows:

> If Injury to the insured *results in Temporary Total Disability within the Commencement Period* shown in the Schedule . . . the Company will pay the Temporary Total Disability Benefit specified below[.] The Commencement Period starts on the date of the accident that caused such Injury.  After the Waiting Period has been satisfied, the Temporary Total Disability Benefit shall be payable, retroactively, from the date the disability began, provided that the insured remains Temporarily Totally Disabled.
>
> \*   \*   \*
>
> **Temporary Total Disability, Temporarily Totally Disabled** means disability that: (1) *prevents an Insured from performing the duties of his or her regular, primary occupation*; and (2) requires that, and results in, the Insured receiving Continuous Care.
>
> \*   \*   \*
>
> **Continuous Care** means weekly, monthly, bi-monthly, or quarterly monitoring and/or evaluation of the disabling condition by a Physician.  The Company must receive proof of continuing Temporary Total Disability on a weekly, monthly, bi-monthly, or quarterly basis.

ECF No. 40 at ¶ 4 (italicized emphasis added).  The Schedule attached to the policy specifies that the Commencement Period applicable to claims for TTD benefits is 90 days.  ECF No. 40 at ¶ 5.

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 7

Defendant denied Plaintiff's claim for CTD benefits on the ground that he never qualified for TTD benefits—a condition precedent to CTD coverage. The applicable policy language provides:

> If Injury to the Insured, resulting in Temporary Total Disability, subsequently results in Continuous Total Disability, the Company will pay the Continuous Total Disability Benefit specified below, provided:
>
>   1. benefits payable for a Temporary Total Disability Covered Loss ceased solely because the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached, but the Insured remains disabled;
>
>   2. the Insured has reached the Maximum Age Limit as shown under the Benefits section of the Schedule on the day after the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached;
>
>   3. the Insured has been granted a Social Security Disability Award for their disability; and
>
>   4. their disability is reasonably expected to continue without interruption until the insured dies.
>
>                                   *   *   *
>
> **Continuous Total Disability, Continuously Totally Disabled** means disability that: (1) prevents an Insured from performing the duties of any occupation for which he or she is qualified by reason of education, training or experience; and (2) requires that, and results in, the Insured receiving Continuous Care.

ECF No. 40 at ¶ 4.

///

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 8

Defendant contends that there are no disputed issues of fact as to whether Plaintiff became "temporarily totally disabled" within 90 days of his injuries on June 11, 2009, and February 20, 2010.  The Court agrees.  It is undisputed that Plaintiff continued to work full time as a courier for Henry Industries through December 2010.  ECF No. 40 at ¶¶ 7, 11, 12, 14, 17.  The fact that Plaintiff continued to work during this period means that he was not "prevent[ed] . . . from performing the duties of his . . . regular, primary occupation."  As a result, Plaintiff was not "temporarily totally disabled" during this period.  Because Plaintiff did not become "temporarily totally disabled" within 90 days of either injury—a condition precedent to coverage under the plain language of the policy—he is not entitled to TTD or CTD benefits as a matter of law.

Plaintiff has raised a number of arguments in an effort to avoid this rather straightforward result.  None are persuasive.  First, Plaintiff cites several cases for the proposition that an insurer may not deny coverage due to an insured's failure to provide a timely proof of loss form unless the insurer has been "substantially prejudiced" by the delay.  ECF No. 45 at 4-7.  According to Plaintiff, these cases illustrate that substantial prejudice is a prerequisite to denying coverage under the 90-day commencement period.  ECF No. 45 at 7-9.

This argument is based upon a flawed premise: that there is "no difference" between a denial for failure to provide a timely proof of loss and a denial pursuant

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 9

to a commencement period.  ECF No. 45 at 7.  Unlike a requirement that a proof of loss be submitted within a specified time, a commencement period is a substantive, bargained-for limitation of coverage.  *See Lewis v. Preferred Accident Ins. Co. of New York*, 151 Wash. 396, 397, 400 (1929) (applying provision in disability policy which required the insured to become "wholly and continuously disabled" from the "date of [the] accident" as a substantive limitation of coverage).  Defendant need not demonstrate "substantial prejudice" in order to enforce the commencement period, as such a requirement would effectively grant Plaintiff coverage for which he did not pay.  *See Safeco Title Ins. Co. v. Gannon*, 54 Wash. App. 330, 339 (1989) (declining to apply the "notice-prejudice" rule where doing so would "provide coverage the insurer did not intend to provide and the insured did not contract to receive").

Second, Plaintiff argues for application of the so-called "process of nature rule."  The process of nature rule generally provides that an injury which does not, by the "process of nature," become fully disabling until after the expiration of a disability commencement period will be deemed to have become fully disabling as of the moment the injury occurred, thereby precluding the insurer from asserting defenses relating to the untimely onset of full disability.  *See, e.g.*, *Moore v. Am. United Life Ins. Co.*, 197 Cal. Rptr. 878, 892 (Cal. Ct. App. 1984).  While this may

be a valid argument in other jurisdictions, Washington does not follow the process of nature rule. *Lewis*, 151 Wash. at 400-01.

Third, Plaintiff argues that enforcement of the commencement period would be "unjust." ECF No. 45 at 13. Relying upon the opinions of two insurance experts, Plaintiff asserts that allowing an insurer to deny coverage on this basis "makes no sense in terms of the risks insured against," and "unreasonably restricts the coverage of the policy." ECF No. 45 at 14 (emphasis and internal quotation marks omitted). Contrary to Plaintiff's assertions, allowing an insurer to deny coverage on this basis makes "excellent sense." *Lewis*, 151 Wash. at 399. As explained in *Lewis*,

> It often happens that considerable difficulty arises in determining whether or not a particular thing is the proximate or remote cause of an injury and its consequences; and to avoid this difficulty in the numerous and ever-varying cases which might arise we think the company meant to have it understood that it would not be responsible for loss of time resulting from a physical injury, unless it was plain and manifest that the injury directly, alone, and without delay occasioned such loss of time; and that it would not be liable for loss of time which might result from other intervening causes, taking effect after the injury was actually received.

151 Wash. at 399. Enforcement of the commencement period is neither unjust nor unreasonable.

Finally, Plaintiff makes a rather confusing argument as to "causation." As far as the Court can discern, the force of this argument is that Plaintiff is *presently*

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 11

"temporarily totally disabled" and/or "continuously totally disabled" solely as a result of his two workplace injuries. This argument appears to have been made in an attempt to explain away any disabling effects of any injuries Plaintiff may have sustained during a car accident on October 5, 2010. *See* ECF No. 45 at 17-18.

Plaintiff's car accident has no bearing on this case. As noted above, Plaintiff was injured on June 11, 2009, and February 20, 2010. The 90-day commencement periods for these injuries expired on September 10, 2009, and May 20, 2010, respectively. Plaintiff concedes that he resumed full-time work as a contract courier for Henry Industries before the expiration of either period. The fact that he was in a car accident some seven-and-a half months after the second injury is irrelevant.

Similarly, the Social Security Administration's determination that Plaintiff was totally disabled as of October 4, 2010,[3] is immaterial. Assuming for the sake of argument that Plaintiff's total disability was "caused" exclusively by his workplace injuries, the fact remains that Plaintiff was not "prevent[ed] . . . from performing the duties of his . . . primary occupation" until long after both commencement periods had expired. Thus, for the reasons discussed above,

---

[3] The SSA mistakenly found the auto accident occurred on this date. *See* ECF No. 41-12 at 102.

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 12

1    Plaintiff is not entitled to TTD or CTD benefits.  Defendant's motion for summary

2    judgment on Plaintiff's claims for breach of contract and declaratory relief is

3    granted.

4           2. <u>Bad Faith Claim</u>

5           Plaintiff's remaining causes of action arising from the denial of his claim for

6    TTD and CTD benefits are for (1) common law bad faith; (2) violations of the

7    Washington Consumer Protection Act ("CPA"), RCW 19.86.010 *et seq.*; and (3)

8    violations of the Washington Insurance Fair Conduct Act ("IFCA"), RCW

9    48.30.015.  Defendant has moved for summary judgment on these claims on the

10   ground that its denial of coverage was proper and that its handling of Plaintiff's

11   claim was reasonable as a matter of law.

12          Plaintiff's memorandum in opposition to Defendant's motion does not

13   directly address the continued validity of any of these claims.  Plaintiff's own

14   motion for partial summary judgment, however, could be construed as a request for

15   judgment as a matter of law on his CPA and IFCA claims.  Due to this unusual

16   briefing posture, the Court will address Plaintiff's bad faith claim immediately

17   below.  Plaintiff's CPA and IFCA claims, which are arguably the subject of cross-

18   motions for partial summary judgment, will be addressed separately.

19          Insurers doing business in the State of Washington owe a duty of good faith

20   to their insureds.  RCW 48.01.030.  In the insurance context, good faith requires

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 13

more than mere honesty and lawfulness of purpose; the insurer must "give equal consideration to the insured's interests." *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 165 Wash.2d 122, 129 (2008) (quotations and citations omitted). Insurers who violate this duty are subject to a common law cause of action for bad faith. *Safeco Ins. Co. of Am. v. Butler*, 118 Wash.2d 383, 389 (1992). An insured may maintain a cause of action for bad faith even when the insurer's decision to deny coverage is ultimately proven correct. *See Coventry Assoc. v. Am. States. Ins. Co.*, 136 Wash.2d 269, 279-80 (1998) ("We hold an insured may maintain an action against its insurer for bad faith investigation of the insured's claim and violation of the CPA regardless of whether the insurer was ultimately correct in determining coverage did not exist.").

"To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Smith v. Safeco Ins. Co.*, 150 Wash.2d 478, 484 (2003). "Bad faith will not be found where a denial of coverage . . . is based upon a reasonable interpretation of the insurance policy." *Kirk v. Mt. Airy Ins. Co.*, 134 Wash.2d 558, 560 (1998). Whether an insurer acted in bad faith is a question of fact to be resolved by the jury unless "there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances, or the insurance company is entitled to prevail as a matter of law on the facts construed most favorably to the nonmoving

1   party." *Id.*  The operative question is simply whether the insurer acted reasonably

2   in light of all the facts and circumstances of the case.  *Anderson v. State Farm Mut.*

3   *Ins. Co.*, 101 Wash. App. 323, 329-30 (2000).

4          Here, there are no genuine issues of material fact as to the reasonableness of

5   Defendant's conduct.  As noted above, it is undisputed that Plaintiff resumed full-

6   time work as a courier for Henry Industries within 90 days of sustaining both

7   workplace injuries.  After learning that Plaintiff was able to resume full-time work,

8   Defendant determined that Plaintiff was not "temporarily totally disabled" as that

9   term is defined in the policy.  This determination was based upon a reasonable

10  investigation of Plaintiff's claims and a reasonable (and ultimately correct)

11  interpretation of the policy.  On the facts presented, no rational jury could find that

12  Defendant's actions were "unreasonable, frivolous, or unfounded."  *Smith*, 150

13  Wash.2d at 484.  Defendant is entitled to summary judgment on this claim.

14  **B. Cross-Motions for Partial Summary Judgment (CPA and IFCA Claims)**

15         Plaintiff's motion for partial summary judgment seeks judgment as a matter

16  of law on Defendant's "numerous insurance code violations."  ECF No. 42 at 21.

17  His briefing does not specifically tie any of the alleged violations to a particular

18  cause of action, and the Court cannot determine with any degree of certainty what

19  relief Plaintiff is actually seeking.  On one hand, Plaintiff could be requesting

20  judgment in his favor on his CPA and IFCA claims.  This would seem to be the

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 15

most reasonable interpretation of Plaintiff's briefing, as certain "insurance code violations" are actionable under the CPA and IFCA.  On the other hand, Plaintiff's reply briefing specifically states that "the Insurance Fair Conduct Act (IFCA) and the Consumer Protection Act (CPA) claims were *not* the subject of [his] motion." ECF No. 51 at 2 (emphasis added).  Plaintiff's reply also suggests that the purpose of his motion for partial summary judgment is to establish that Defendant is precluded from denying coverage as a result of the alleged insurance code violations—an argument that would seem to relate to his claims for breach of contract and declaratory relief.  *See* ECF No. 51 at 2 ("Emery's Motion for Partial Summary Judgment found key insurance code violations, critical to [Defendant's] enforcement of the terms of its policy.  The code violations by [Defendant will preclude a denial of benefits[.]").  Plaintiff's proposed order sheds no light on the subject; it merely recites that Defendant "ha[s] repeatedly violated the insurance code or laws of the [S]tate of Washington, including but not limited to RCW [Chapter] 48.18 and WAC [Chapter] 284-30."  ECF No. 42-19.

In an abundance of caution, the Court will construe Plaintiff's motion as applying to both sets of claims.  Plaintiff is kindly reminded to clearly state the nature of his requested relief in any future motion.  *See* Fed. R. Civ. P. 7(b)(1) (requiring moving party to "state with particularity the grounds for seeking the order" and "state the relief sought").

1.  <u>Claims for Breach of Contract and Declaratory Relief</u>

The Court has already granted Defendant summary judgment on these

claims for the reasons stated above in conjunction with Defendant's motion for

partial summary judgment.  To whatever extent Plaintiff intended to argue that

violations of RCW Chapter 48.18 and/or WAC Chapter 284-30 preclude a denial

of coverage, the argument is unpersuasive.  Indeed, the argument is foreclosed by

*Hayden v. Mut. of Enumclaw Ins. Co.*, which holds that, in the absence of prejudice

to the insured or bad faith on the part of the insurer, a violation of an unfair claims

settlement regulation under WAC Chapter 284-30 does not preclude or estop an

insurer from asserting defenses to coverage that may be available under the terms

of the policy.  141 Wash.2d 55, 62-63 (2000); *see also Coventry Assoc.*, 136

Wash.2d at 284-85 (holding that first-party insured is not entitled to "coverage by

estoppel" as a remedy for bad faith claims investigation).

Contrary to Plaintiff's assertions, *Prest v. Am. Bankers Life Assurance Co.*,

79 Wash. App. 93 (1995), does not stand for the proposition that an insurance

company is estopped from asserting defenses to coverage when it fails to deliver a

copy of the policy or a certificate of coverage to the insured.  Instead, *Prest* stands

for the much more limited proposition that an insurer may not assert a material

misrepresentation defense when the document containing the misrepresentation

(the application for insurance) is not attached to the copy of the policy delivered to

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 17

1    the insured.  79 Wash. App. at 98-99; *see also* RCW 48.18.080(1) (prohibiting an

2    application for insurance from being admitted in evidence in a civil proceeding

3    "unless a true copy of the application was attached to or otherwise made a part of

4    the policy when issued and delivered").  *Prest* is inapposite because Defendant has

5    not attempted to admit Plaintiff's application for insurance.

6         Plaintiff's citation to *Wood v. Cascade Fire & Marine Ins. Co.*, 8 Wash. 427

7    (1894) is similarly unavailing.  *Wood* involved a contract of insurance that was

8    allegedly issued in violation of the State of New York's insurance regulations.  8

9    Wash. at 428-29.  The case has no bearing whatsoever on the validity of a contract

10   of insurance allegedly issued in violation of the State of Washington's insurance

11   regulations.  The same is true of *Brown Mach. Works & Supply Co. Inc. v. Ins. Co.*

12   *of N. Am.*, 659 So.2d 51 (Ala. 1995) and *Wheelways Ins. Co. v. Hodges*, 872

13   S.W.2d 776 (Tex. App. 1994), both of which apply a foreign state's regulations.

14        Finally, RCW 48.15.030 does not dictate a contrary result.  That statute

15   provides that "[a] contract of insurance effectuated by an unauthorized insurer in

16   violation of the provisions of this code shall be voidable except at the instance of

17   the insurer."  RCW 48.15.030.  By its terms, the statute only allows *recession* of a

18   contract of insurance.  It does not preclude an unauthorized insurer from asserting

19   a valid policy defense once an insured has made a claim for benefits.  Because

20   Plaintiff has not sought to rescind the policy, RCW 48.15.030 does not apply.

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 18

1    2.  CPA and IFCA Claims

2    The CPA prohibits "[u]nfair methods of competition and unfair or deceptive

3    acts or practices in the conduct of any trade or commerce."  RCW 19.86.020.  This

4    prohibition applies to "person[s] engaged in the business of insurance" pursuant to

5    RCW 48.30.010(1); *see also* RCW 19.86.170 (applying CPA to "actions and

6    transactions prohibited or regulated under the laws administered by the insurance

7    commissioner").  Thus, under the CPA and the Washington insurance code,

8    "individuals are vested with a private cause of action against insurers for unfair or

9    deceptive practices."  *Hayden*, 141 Wash.2d at 62.  "Individuals bringing such

10   actions must show (1) an unfair or deceptive act or practice; (2) in trade or

11   commerce; (3) that impacts the public interest; (4) which causes injury to the party

12   in his business or property; and (5) which injury is causally linked to the unfair or

13   deceptive act."  *Id.*

14   Both the Washington Legislature and the Washington State Office of the

15   Insurance Commissioner have identified certain acts and practices in the business

16   of insurance which are inherently unfair or deceptive.  These enumerated acts and

17   practices are treated as a *per se* violations of the CPA, meaning that the first two

18   elements of a CPA claim are automatically satisfied.  *Hayden*, 141 Wash.2d at 62;

19   *see also Onvia*, 165 Wash.2d at 133 ("[W]here a violation of chapter 284-30 WAC

20   is shown, the first two elements of a CPA claim are proved.").  A single violation

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 19

of one of these statutes or regulations is actionable under the CPA. *See Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 114 Wash.2d 907, 922 (1990) (holding that an insured may bring a *per se* CPA claim "based upon a violation of RCW 48.30.010(1) resulting from a single violation of WAC 284-30-330").

IFCA applies exclusively to first-party insurance contracts. The statute creates a private right of action against an insurer who (1) "unreasonably denie[s] a claim for coverage or payment of benefits"; and/or (2) violates one of several enumerated regulations promulgated by the insurance commissioner. *See* RCW 48.30.015(1), (5). A plaintiff who prevails on an IFCA claim is entitled to recover up to treble damages and reasonable attorney's fees and litigation costs. RCW 48.30.015(2), (3).

Plaintiff asserts that Defendant violated a litany of statutes and regulations governing the business of insurance. As noted above, Plaintiff has not attempted to link these alleged violations to any particular claim. In the interest of efficiency, the Court will address the alleged violations in two separate groups: (1) those that are actionable under IFCA or as *per se* violations of the CPA; and (2) those that can only be pursued as a non-*per se* CPA claim.

i. *Violations Actionable Under IFCA or as Per Se CPA Claims*

Plaintiff contends that Defendant violated **WAC 284-30-330**. This alleged violation is actionable under IFCA. RCW 48.30.015(5). The regulation provides,

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 20

in relevant part:

> The following are hereby defined as unfair methods of competition
> and unfair or deceptive acts or practices of the insurer in the business
> of insurance, specifically applicable to the settlement of claims:
>
> > (1) Misrepresenting pertinent facts or insurance policy provisions;
>
> > \*    \*    \*
>
> > (13) Failing to promptly provide a reasonable explanation of the
> > basis in the insurance policy in relation to the facts or
> > applicable law for denial of a claim or for the offer of a
> > compromise settlement.

WAC 284-30-330(1), (13).  The basis for the alleged violation of this regulation is

that one of Defendant's employees, Jeffrey Young, "misrepresented to [Plaintiff]

how to file a disability claim" during a telephone conversation on December 30,

2010.  ECF No. 42 at 15.  Specifically, Plaintiff contends that Mr. Young

erroneously informed him that his claim for benefits "must be *filed* within a 90-day

commencement period[.]"  ECF No. 51 at 7 (emphasis in original).

Assuming *arguendo* that Defendant did in fact misrepresent the nature of the

90-day commencement period (*i.e.*, that the commencement period required

Plaintiff to *submit* a claim within 90 days rather than become "temporarily totally

disabled" within 90 days), Plaintiff cannot establish that he was injured by the

misrepresentation.  As noted above, it is undisputed that Plaintiff's claim was

denied because he did not become "temporarily totally disabled" within the 90-day

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 21

commencement period applicable to either workplace injury.  The claim was not

denied on the ground that it was untimely submitted.  The absence of a palpable

injury is fatal to any claim arising from this alleged violation.  *See Panag v.*

*Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 57-65 (2009) (CPA plaintiff must

prove quantifiable injury to business or property attributable to the defendant's

unfair or deceptive act or practice); *Coventry Assoc.*, 136 Wash.2d at 276-77 ("As

an element of every bad faith or CPA action . . . an insured must establish [that] it

was harmed by the insurer's bad faith acts.") (citing *Butler*, 118 Wash.2d at 389,

and *Kallevig*, 114 Wash.2d at 920)).

        Further, there is also no evidence from which a jury could find that

Defendant failed to promptly provide a reasonable explanation for its decision to

deny Plaintiff's claim.  As discussed above, Defendant's decision to deny the claim

on the ground that Plaintiff did not become "temporarily totally disabled" within

the 90-day commencement period was entirely reasonable.  This decision was

communicated to Plaintiff with reasonable promptness.  Accordingly, the Court

will grant Defendant's motion for summary judgment on this claim.

        Plaintiff also contends that Defendant violated **WAC 284-30-350(1)**.  This

alleged violation is actionable under IFCA.  RCW 48.30.015(5).  The regulation

provides: "No insurer shall fail to fully disclose to first party claimants all pertinent

benefits, coverages or other provisions of an insurance policy or insurance contract

under which a claim is presented." WAC 284-30-350(1).  This alleged violation

stems from the same conduct identified above.  ECF No. 51 at 7.  The Court will

grant Defendant's motion for summary judgment on this claim for the reasons

previously stated.

Next, Plaintiff contends that Defendant violated **WAC 284-30-600**.  This

alleged violation is actionable under the CPA.  RCW 19.86.170; RCW

48.30.010(2).  The regulation provides, in relevant part:

> (1)  Under RCW 48.30.010, it is an unfair method of competition and an unfair practice for any insurer to engage in any insurance transaction, as defined in RCW 48.01.060, regarding life insurance, annuities, or disability insurance coverage on individuals in this state under a group policy delivered to a policyholder outside this state when:
>
> \*     \*     \*
>
> > (c) The policy or certificate delivered to residents of the state of Washington does not include all terms and conditions of the coverage.
>
> \*     \*     \*
>
> (3) It is further defined to be an unfair practice for any insurer marketing group insurance coverage in this state to do the following with respect to the coverage:
>
> \*     \*     \*
>
> > (b) To fail to file copies of all certificate forms and any other related forms providing coverage in Washington, including trust documents or articles of incorporation with the commissioner at least thirty days prior to use; and

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 23

    (c)  To fail to file with the commissioner a copy of the
disclosure statement required by WAC 284-30-610, where
the sale of coverage to individuals in this state will be
through solicitation by insurance producers. The disclosure
statement must be appropriately completed, as it appears
when delivered to the Washington individuals who are
solicited by the Washington licensees.
The disclosure form must also be filed at least thirty days
prior to any solicitation of coverage.

WAC 284-30-600(1)(c), (3)(b)-(c).  The bases for the alleged violations of this

regulation are that Defendant (1) "did not file or submit to the OIC the required

trust documents"; (2) "did not obtain a signed disclosure statement from its

insured"; and (3) did not deliver to Plaintiff "a certificate of coverage setting forth

a statement of the essential features (all terms and conditions)" of the policy.  ECF

No. 51 at 7.

      The first and second alleged violations fail as a matter of law because WAC

284-30-600(3) does not apply to Defendant.  As Defendant correctly notes, this

provision only applies to insurers who "market" group insurance coverage in the

State of Washington.  WAC 284-30-600(3).  Defendant asserts that it did not

"market" the type of coverage afforded by the policy at issue directly to

Washington residents.  Carter Decl., ECF No. 50, at ¶ 11.  Plaintiff has not

challenged this assertion.  In fact, Plaintiff alleges that his employer, rather than

Defendant, was responsible for "marketing" the policy to him as an employee

benefit.  ECF No. 44 at 3.  Plaintiff's employer, however, is not an "insurer" and is

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 24

therefore not subject to regulation under WAC 284-30-600(3).  As no rational trier of fact could find that Defendant violated this regulation, the Court will grant Defendant's motion for summary judgment on any claims arising from an alleged violation of WAC 284-30-600(3).

With regard to the alleged violation of WAC 284-30-600(1), neither party is entitled to summary judgment.  Unlike the subsection addressed immediately above, this subsection does apply to Defendant.  *See* WAC 284-30-600(1)(c) (prohibiting "*any insurer* [from] engag[ing] in *any insurance transaction*" relating to disability coverage issued to a Washington resident under an out-of-state group policy unless the policy or a certificate of coverage is delivered to the insured) (emphasis added).  Defendant does not dispute that it failed to provide Plaintiff with a copy of the policy or certificate explaining the terms and conditions of coverage prior to processing his claims.  ECF No. 48 at 4.  Thus, Defendant violated WAC 284-30-600(1)(c).

However, the Court finds that there are genuine issues of material fact as to whether Plaintiff sustained a quantifiable injury to his business or property as a result of the above violation.  Because such an injury is an essential component of any claim arising from this violation (*see Panag*, 166 Wash.2d at 57-56; *Coventry Assoc.*, 136 Wash.2d at 276-77), Plaintiff is not entitled to summary judgment. ///

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 25

Finally, Plaintiff contends that Defendant violated **WAC 284-30-610**.  This alleged violation is actionable under the CPA.  RCW 19.86.170; RCW 48.30.010(2).  The regulation provides, in relevant part:

(1) It is an unfair method of competition and an unfair practice for an insurer to permit a licensed insurance producer, whether appointed by the insurer or not, to solicit an individual in the state of Washington to buy or apply for life insurance, annuities, or disability insurance coverage when the coverage is provided under the terms of a group policy delivered to an association or organization (or to a trustee designated by the association or organization), as policyholder, outside this state, unless the following steps are taken:

(a) An accurately completed disclosure statement, substantially in the form set forth in subsection (2) of this section, must be brought to the attention of the individual being solicited before the application for coverage is completed and signed. The disclosure form must be signed by both the soliciting licensee and the individual being solicited and it must be given to the individual.

\* \* \*

(2) Disclosure statement form: (Type size to be no less than ten-point) [Text of disclosure statement].

WAC 284-30-610(1)(a), (2).  The basis for the alleged violation of this regulation is that Defendant failed to obtain a completed disclosure statement from Plaintiff.  ECF No. 51 at 7.  Like WAC 284-30-600(3), this regulation does not apply to Defendant.  By its terms, WAC 284-30-610 only applies to "insurer[s] [who] permit a licensed insurance producer . . . *to solicit an individual in the state of*

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 26

*Washington* to buy or apply for . . . disability insurance coverage" provided under a group policy issued to a policyholder outside the state.  WAC 284-30-610(1) (emphasis added).  Once again, it is undisputed that Defendant did not solicit (or allow any other insurance producer to solicit) the type of coverage afforded by the policy at issue directly to Washington residents.  Carter Decl., ECF No. 50, at ¶ 11. Thus, there are no facts from which a jury could find that Defendant violated this regulation, and Defendant is entitled to summary judgment.

ii. *All Other Alleged Violations*

Plaintiff has alleged violations of each of the following statutes:

- RCW 48.05.030(2), which provides: "Every certificate of authority shall specify the name of the insurer, the location of its principal office, the name and location of the principal office of its attorney-in-fact if a reciprocal insurer, and the kind or kinds of insurance it is authorized to transact in this state."

- RCW 48.05.040(4) provides: "To qualify for and hold a certificate of authority an insurer must . . . Fully comply with, and qualify according to, the other provisions of this code."

- RCW 48.15.020(1), which provides: "An insurer that is not authorized by the commissioner may not solicit insurance business in this state or transact insurance business in this state, except as provided in this chapter."

- RCW 48.18.100(1), which provides: "No insurance policy form or application form where written application is required and is to be attached to the policy, or printed life or disability rider or endorsement form may be issued, delivered, or used unless it has been filed with and approved by the commissioner."

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 27

- RCW 48.18.100(5), which provides: "No form may knowingly be issued or delivered as to which the commissioner's approval does not then exist."

- RCW 48.18.260(1), which provides: "Subject to the insurer's requirements as to payment of premium, every policy shall be delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance."

- RCW 48.19.010(2), which provides: "[E]very insurer shall, as to disability insurance, before using file with the commissioner its manual of classification, manual of rules and rates, and any modifications thereof."

- RCW 48.20.102, which provides: "PROOFS OF LOSS: Written proof of loss must be furnished to the insurer at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the insurer is liable and in case of claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required."

- RCW 48.21.050, which provides: "Every policy of group or blanket disability insurance shall contain in substance the provisions as set forth in RCW 48.21.060 to 48.21.090, inclusive, or provisions which in the opinion of the commissioner are more favorable to the individuals insured, or at least as favorable to such individuals and more favorable to the policyholder. No such policy of group or blanket disability insurance shall contain any provision relative to notice or proof of loss, or to the time for paying benefits, or to the time within which suit may be brought upon the policy, which in the opinion of the commissioner is less favorable to the individuals insured than would be permitted by the standard provisions required for individual disability insurance policies."

- RCW 48.21.080, which provides: "In group disability insurance policies there shall be a provision that the insurer shall issue to the employer, the policyholder, or other person or association in whose name such policy is

ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 28

issued, for delivery to each insured employee or member, a certificate setting forth in summary form a statement of the essential features of the insurance coverage, and to whom the benefits thereunder are payable described by name, relationship, or reference to the insurance records of the policyholder or insurer. . . . This section shall not apply to blanket disability insurance policies."

Defendant argues that its alleged violations of the above statutes do not give rise to *per se* CPA claims.  ECF No. 47 at 6-13.  The Court agrees.  Unlike the regulations in WAC Chapter 284-30 discussed above, these statutes do not proscribe conduct which has been deemed inherently unfair or deceptive by a legislative body.  Indeed, not one of the above statutes can be found in RCW Chapter 48.30, which is devoted to "Unfair Practices and Frauds" in the business of insurance.  As a result, violations of these statutes are not actionable under RCW 48.30.010 as *per se* violations of the CPA.

Although violations of the above statutes could potentially give rise to **non**-*per se* CPA claims, Plaintiff has not advanced any such claims.  Moreover, even if Plaintiff had pursued non-per se claims, he has not produced any evidence from which a rational jury could find in his favor on the first element of those claims: that Defendant's alleged conduct "has a capacity to deceive a substantial portion of the public."  *Saunders v. Lloyd's of London*, 113 Wash.2d  330, 345 (1989) (quotation and citation omitted).  Thus, the Court will grant Defendant's motion

for summary judgment on any CPA claims arising from its alleged violations of the above statutes.

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Partial Summary Judgment (ECF No. 39) is **GRANTED in part** and **DENIED in part**. Defendant is awarded summary judgment on **all** causes of action arising from its denial of Plaintiff's claim for TTD and CTD disability benefits **except** Plaintiff's CPA claim arising from Defendant's failure to provide Plaintiff with a certificate explaining the terms and conditions of coverage under its disability insurance policy in violation of WAC 284-30-600(1)(c).

2. Plaintiff's Motion for Partial Summary Judgment (ECF No. 42) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** October 8, 2013.



THOMAS O. RICE
United States District Judge